**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN BELTON,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | NO. 1:25-CV-09709<br><br>Judge Edmond E. Chang |

## MEMORANDUM OPINION AND ORDER

Steven Belton sued Experian Information Solutions, Inc., for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*[1] R. 1, Compl.[2] He alleges that Experian failed to include key information from his credit file, including payment histories, balance, monthly payments, and full account numbers. *Id.* ¶¶ 14–15. Experian moved to compel arbitration because it maintains that Belton agreed to resolve this type of dispute through arbitration when he signed up for services through CreditWorks, Experian's credit-monitoring service provided by ConsumerInfo.com, one of its affiliates. R. 14, Def.'s Mot.; R. 15, Def.'s Br. at 4. Belton argues that arbitration should not be compelled (at least not yet) because there is a dispute of fact over whether he agreed to arbitration. R. 18, Pl.'s Resp. at 2. For the reasons stated in this Opinion, the motion to compel arbitration is denied for now. Both sides

[1]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

must submit additional evidence so that the Court can make a definitive finding one way or the other.

## I. Background

Steven Belton alleges that he requested and obtained copies of his consumer-credit disclosures from Experian online (through annualcreditreport.com) in May 2025. Compl. ¶¶ 11. Experian's disclosure allegedly failed to include information from Belton's credit file, such as payment histories, balances, monthly payments, credit limits, and full account numbers. *Id.* ¶¶ 14–15. So Belton sued Experian for violating the Fair Credit Reporting Act, which requires all consumer reporting agencies to "clearly and accurately disclose" all information in a consumer's file when it is requested. Compl.; 15 U.S.C. § 1681g(a).

Experian moved to compel arbitration and submitted an affidavit from Dan Smith. Def.'s Mot.; R. 15-1, Smith Decl. Smith is the Senior Director of Business Governance for ConsumerInfo.com, which also does business as Experian Consumer Services. Smith Decl. ¶ 1. Experian is an affiliate of both ConsumerInfo.com and Experian Consumer Services: all are wholly-owned subsidiaries of Experian Holdings, Inc. *Id.* ¶ 2. Smith's duties include "supporting the consumer enrollment process into CreditWorks and related services," which requires familiarity with "how consumers enroll, the forms they must complete to enroll, as well as the Terms of Use governing such services." *Id.* ¶ 1. Smith's position allows him to access information that "confirmed [Belton's] membership details, such as the date and time of enrollment, and the version of the Terms of Use they agreed to." *Id.*

According to Smith, he reviewed CreditWorks's "membership enrollment data" to determine that Belton first enrolled in CreditWorks on June 17, 2017. Smith Decl. ¶ 3. But Smith offers no more concrete facts on the "membership enrollment data." Was it a computer database? How is the data organized and searched through? And why is there no affidavit exhibit of a report of the search query or a screenshot of whatever it is that Smith read that led him to the conclusion that Belton enrolled on that particular date?

In the declaration, Smith goes on to describe the CreditWorks enrollment process, and this part of his declaration does offer much more concrete detail, along with exhibits of forms used in the process. *See* Smith Decl. ¶¶ 3–4. To successfully enroll in CreditWorks, Belton would have had to complete two webforms. *Id.* ¶ 3. The first webform required Belton to enter personal information, such as his name, address, phone number, and e-mail address. *Id.*; *see* R. 15-2, Def.'s Br. Exh. 1, First Webform. After he entered the information, in order to continue with the enrollment process, Belton had to click the "Submit and Continue" button on the form. Smith Decl. ¶ 3. The second webform required Belton to enter his social security number, his date of birth, a username, and a password. Smith Decl. ¶ 3; *see* R. 15-3, Def.'s Br. Exh. 2, Second Webform. At the bottom of the second webform, there was a disclosure stating: "By clicking 'Submit Secure Order': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." Smith Decl. ¶ 3; Second Webform. The phrase "Terms of Use Agreement" were included in a link with blue text, and when clicked, led the user to the full text of the

agreement. Smith Decl. ¶ 4; Second Webform. A purple button that read “Submit Secure Order” was below the disclosure. Smith Decl. ¶ 4; Second Webform. Smith avers that Belton would not have been able to successfully enroll in CreditWorks unless he clicked the “Submit Secure Order” button, thus accepting and agreeing to the Terms of Use Agreement. Smith Decl. ¶¶ 4–5. Smith also states that Belton again completed the enrollment process in February 2024, although his existing CreditWorks membership was still active. *Id.* ¶ 6.

The 2017 Terms of Use included an arbitration clause:

> ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites …. [F]or the avoidance of doubt, any dispute you may have with us arising out of the Fair Credit Reporting Act … relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate.

R. 15-4, Def.’s Br. Exh. 3, 2017 Terms of Use at 5.[3] The 2023 and 2024 Terms of Use included an updated arbitration clause that eliminated the carve-out for disputes arising out of the Fair Credit Reporting Act:

> ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement, which includes any Information you obtain through the Services or Websites …. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us relating to, or arising out of, this Agreement, any Service and/or Website, including any Information you obtained through the Services or Websites, subject to arbitration to the fullest extent permitted by law. The agreement to arbitrate includes, but is not limited to, claims brought by you against ECS, whether

[3]Page-number citations are to the PDF pages of the exhibits, which do not have page numbers on the bottom of the page, unless otherwise noted.

> based in contract, tort, statute (including, without limitation, the Fair Credit Reporting Act and the Credit Repair Organizations Act)[.]

R. 15-6, Def.'s Br. Exh. 5, 2023 Terms of Use at 15–16; R. 15-7, Def.'s Br. Exh. 6, 2024 Terms of Use at 15–16. The arbitration clauses also define the terms "you" and "your" as "a [v]isitor or a [c]ustomer," "ECS" as ConsumerInfo.com, Inc. and "its predecessors in interest, successors and assigns, affiliates (including, but not limited to, Experian Information Solutions, Inc.), agents, employees, and any of its third party service providers … who ECS uses in connection with the provision of the Services to you," and "we" and "us" as "you and ECS." 2023 Terms of Use at 3, 15; 2024 Terms of Use at 3, 15.

In response to the arbitration-clause evidence, Belton submitted an *unsigned* declaration opposing Experian's motion to compel arbitration. Pl.'s Resp. at 9–10. He asserts that he did not enroll in CreditWorks on June 17, 2017, February 13, 2024, or on any other date. *Id.* at 9. Belton also claims that he has "no recollection of accessing CreditWorks, completing any webforms, clicking buttons to accept terms, or agreeing to arbitrate claims against Experian." *Id.* at 10.

## II. Legal Standard

The Federal Arbitration Act applies when arbitration agreements involve interstate commerce. 9 U.S.C. §§ 1–2. Under the Act, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The Supreme Court has described this provision as "reflecting both a liberal federal policy favoring arbitration," as well as

"the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up).[4] Under the Federal Arbitration Act, a party seeking to compel arbitration "must show three elements: (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 617–18 (7th Cir. 2024). But "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023) (cleaned up). Whether an agreement exists is determined by the court based on "ordinary state-law principles that govern the formation of contracts"—that is, "the existence of an offer, acceptance, and consideration." *Id.* at 701.

A party seeking to compel arbitration has the burden of showing that the parties agreed to arbitrate the dispute. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). If this burden is satisfied, then the "party opposing a motion to compel arbitration bears the burden of identifying a triable issue of fact" as to whether the parties validly entered into this agreement. *Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 725 (N.D. Ill. 2017). Though the Federal Arbitration Act "does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet," "courts that have addressed the question have

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). But the non-movant will not successfully resist arbitration "by generally denying the facts upon which the right to arbitration rests … [they] must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* "Limited discovery may be necessary before a court can rule on a properly contested motion to compel arbitration." *Burks v. Wal-Mart Stores, Inc.*, 2013 WL 4777358, at *2 (N.D. Ill. Sept. 5, 2013).

If the non-movant successfully establishes a genuine dispute of fact on whether the parties agreed to arbitrate, then the Federal Arbitration Act requires that the court hold a trial on that issue. *Kass*, 75 F.4th at 700. The Federal Arbitration Act instructs that "[i]f no jury trial be demanded by the party alleged to be in default … the court shall hear and determine such issue." 9 U.S.C. § 4. Though Belton has demanded a jury trial, Compl., he has not specifically requested a jury for a trial on the issue of contract formation, *see* Pl.'s Resp. A court may "hear and determine [the issue of contract formation]" without a jury if the nonmoving party does not request one. 9 U.S.C. § 4.

## III. Analysis

Experian argues that Belton is bound by an arbitration agreement for a CreditWorks membership that Belton denies having signed up for in the first place. Def.'s Br. at 4. Belton of course would not be bound by an arbitration clause in an agreement

to which he is not a party, so the Court must resolve this issue before it can address the legal question of whether the arbitration clause applies to Belton's claims.

**A. Smith Declaration**

Experian has produced a written agreement to arbitrate in the form of the CreditWorks Terms of Use from 2017, 2023, and 2024. Smith Decl. ¶ 3; *see* 2017 Terms of Use at 5; 2023 Terms of Use at 15; 2024 Terms of Use at 15. The inquiry is thus whether there is a genuine dispute of material fact over Belton's alleged enrollment as a CreditWorks member and acceptance of the Terms of Use's arbitration provision during the enrollment process. Def.'s Br. at 10; Pl.'s Resp. at 2–4, 6–8.

As explained earlier, Experian offers a declaration from Dan Smith, Senior Director of Business Governance for ConsumerInfo.com, averring that (1) Belton first enrolled in CreditWorks on June 17, 2017; and (2) Belton had to complete two webforms to successfully enroll, one of which stated that by clicking "Submit Secure Order," Belton "accept[s] and agree[s] to [Experian's] Terms of Use Agreement." Smith Decl. ¶ 3. Experian provided examples of the webforms and Terms of Use as they would have appeared to Belton at the time of the alleged enrollment. *See* First Webform; Second Webform; 2017 Terms of Use; 2023 Terms of Use; 2024 Terms of Use.

Belton argues that, as a threshold matter, the Court should disregard the Smith Declaration because it fails to satisfy Evidence Rule 602 because Smith "does not claim to have witnessed [Belton]'s alleged actions, participated in the enrollment, or even contemporaneously reviewed any records at the time." Pl.'s Resp. at 5–6. Experian responds that the Smith Declaration is admissible because it is based on

Smith's personal knowledge, and describes his position with Experian, as well as his familiarity with the CreditWorks enrollment process and Experian's records documenting consumers' use of their accounts and their membership details. Def.'s Reply at 2.

Under Civil Rule 56(c)(4), an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. The Smith Declaration meets these requirements. In particular, Smith attests that his job duties require him to "be familiar with, among other things, how consumers enroll, the forms they must complete to enroll, as well as the Terms of Use governing such services." Smith Decl. ¶ 1. Smith's duties also require him to be familiar with "databases that store consumer account information." *Id.* Access to this information and the consumer's personally identifiable information allows Smith to "confirm[] the consumer's membership details, such as the date and time of enrollment, and the version of the Terms of Use they agreed to." *Id.* The statements in the Smith Declaration thus are based on his "personal knowledge, including knowledge acquired in the course and scope of [his] job responsibilities and through the review of pertinent data and documents maintained as business records by [Experian] in the course and scope of [Experian]'s business, including [Experian]'s internal records that store CreditWorks account information." *Id.*

With that basis of knowledge of Experian's business practices, there is no need for Smith to be in the same room with Belton, sitting next to him, in order to provide relevant, admissible evidence on Belton's enrollment process. Smith's knowledge of the enrollment process, including the forms that an individual must navigate through and complete to enroll in CreditWorks, is sufficient firsthand knowledge on which to base his declaration. Belton cites *Austin v. Experian Information Solutions, Inc.*, 148 F.4th 194 (4th Cir. 2025), to support the proposition that the Smith Declaration should be inadmissible, Pl.'s Resp. at 5, but that case does not help Belton. Indeed, the Fourth Circuit held that a similar declaration was admissible because the officer properly demonstrated personal knowledge of "the existence of a binding contract to submit disputes to arbitration." *Austin*, 148 F.4th at 204. So the Smith Declaration provides unrebutted evidence on steps of the CreditWorks enrollment process, including the arbitration agreement.

Having said that, as noted earlier, Smith's declaration does have a gap on the basic issue of CreditWorks's purported June 17, 2017 enrollment of Belton. Smith says that he reviewed CreditWorks's "membership enrollment data" to determine that Belton had enrolled and when. Smith Decl. ¶ 3. But the declaration offers zero additional information on this conclusory assertion. There are no facts on what format the "membership enrollment data" is maintained in and how the data is organized and searched. There are averments that the data is not only *maintained* in the regular course of business (the declaration does at least say that). *See id.* But is the data also based on records that were *made* at or near the time of the reported activity?

*See* Fed. R. Evid. 803(6)(A). And was *making* the record a regular practice of the business? *See* Fed. R. Evid. 803(6)(C). Nor does Smith offer a query-results report or screenshot of a data record to support the assertion of the June 17, 2017 enrollment. Experian must complete the record by filing (if Experian can do so consistent with Civil Rule 11(b)) a more thorough affidavit on Belton's specific alleged enrollment.

**B. Belton Declaration**

The next question is whether Belton has offered admissible evidence. In an *unsigned* declaration submitted as part of his response brief, Belton asserts that he did not enroll with CreditWorks in 2017 or any other date, and has "no recollection of accessing CreditWorks, completing any webforms, clicking buttons to accept terms, or agreeing to arbitrate claims against Experian." Pl.'s Resp. at 9–10. He also argues that Experian's exhibits are blank forms without any identifying information about his enrollment, such as an email address or a timestamp. *Id.* at 7–8. Experian responds that Belton's declaration is unsigned, and thus the Court should disregard it. Def.'s Reply at 3–4.

If Belton's declaration had been signed, then it would have been sufficient to satisfy his evidentiary burden at this stage. When an accountholder expressly denies in a written declaration that he received arbitration terms for an online service, then there is a triable issue of fact over whether a valid arbitration agreement was formed. *Kass*, 75 F.4th at 704. Multiple courts within this district have reached the same conclusion. *See, e.g.*, *Collins v. Citibank, N.A.*, 2022 WL 683661, at *1 (N.D. Ill. Mar. 8, 2022) (denying a motion to compel arbitration because the plaintiff stated that he

"never received the Card Agreement" providing for the arbitration of any claims); *Hoganberry v. Experian Info. Sols., Inc.*, 703 F. Supp. 3d 854, 859–60 (N.D. Ill. 2023) (holding that the plaintiff's claim that he did not open an account with or have a relationship with Citibank was "sufficient, in the court's view, to satisfy [his] evidentiary burden at this stage" and denying the motion to compel arbitration); *Hoffman v. Citibank, N.A.*, 2024 WL 6891019, at *3 (N.D. Ill. Mar. 13, 2024) (holding that plaintiff's declaration raised a triable issue of fact on whether plaintiff and Citibank entered a valid arbitration agreement, and denying the motion to compel arbitration); *Katsis v. Midland Credit Mgmt., Inc.*, 2025 WL 3852406, at *4 (N.D. Ill. Jan. 31, 2025) (holding that despite the record "contain[ing] ample evidence" that the agreement containing the arbitration clause "was sent to and received by plaintiff," "plaintiff has met her burden of creating a genuine dispute as to whether a valid arbitration agreement exists" by denying receipt of the agreement). Importantly, in the cases cited by Experian to support its motion to compel arbitration, the plaintiffs did not contest the issue of whether they enrolled in CreditWorks—or a similar credit monitoring system—as Belton does here. *See Russell v. Experian Info. Sols., Inc.*, 2025 WL 1725168, at *3 (N.D. Ill. June 20, 2025) ("In short, [the plaintiff] argues that [Experian] has not shown that the Terms of Use Agreement and its arbitration clause apply to the present dispute."); *Meeks v. Experian Info. Servs., Inc.*, 2022 WL 17958634, at *2 (9th Cir. Dec. 27, 2022) ("[Plaintiffs] argue that Experian must be a 'signatory' to the arbitration agreement to enforce it and … Experian is not a signatory."); *Wells v. Trans*

*Union, LLC*, 2025 WL 475846, at *4 (E.D. Va. Feb. 12, 2025) ("Plaintiff does not dispute that he became a CreditWorks member on August 6, 2017.").

But the Court must disregard Belton's declaration in its current unsigned form. *See Sheikh v. Grant Reg'l Health Ctr.*, 769 F.3d 549, 551 (7th Cir. 2014) (noting that a statement "might pass muster as a declaration, which can be substituted for an affidavit and thus constitute part of the evidentiary record, provided it complies with the formalities required by 28 U.S.C. § 1746"); *Est. of Davis v. Wells Fargo Bank*, 633 F.3d 529, 539–40 & n.5 (7th Cir. 2011) (holding that the district court correctly disregarded statements that "failed to comply with the requirements of Rule 56(e) and 28 U.S.C. § 1746" in that they were "not signed, dated, or notarized"). Belton must resubmit a signed version of his declaration that complies with 28 U.S.C. § 1746. If he does so, then the signed declaration could be sufficient to establish his evidentiary burden at this stage.

## IV. Conclusion

For the reasons discussed above, Experian's motion to compel arbitration, R. 14, is denied for now. As explained in the Opinion, Experian shall file a more thorough affidavit explaining the specific basis for asserting that Belton enrolled in CreditWorks on June 17, 2017, and attaching a query-results report or at least a screenshot of the data on which Smith relied. At the same time, Belton must file a signed version of the under-oath declaration attached to his response brief. The filings are

due by October 13, 2026. The Court will review the filings and decide on an appropriate next step.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 25, 2026